```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT

ALLEN R. ROBINSON and IMANI       :
HEALTH INSTITUTE, INC.            :
                                  :
          Plaintiffs,             :
                                  :
     v.                           :   Case No. 1:07-CV-265
                                  :
                                  :
PAUL JARRIS, Individually and     :
as Health Commissioner for the    :
State of Vermont,                 :
SHARON MOFFATT, Individually      :
and as health Commissioner for    :
the State of Vermont, and         :
WILLIAM APAO, Director,           :
Division of Surveillance,         :
Vermont Department of Health,     :
                                  :
          Defendants              :
_____    :
```

RULING ON DEFENDANTS' MOTION TO DISMISS, MOTION TO DISMISS
INDIVIDUAL-CAPACITY CLAIMS, AND MOTION TO DISMISS AMENDED
COMPLAINT
(Papers 5, 14 and 25)

I.   Introduction

Plaintiffs Allen R. Robinson ("Robinson") and Imani Health Institute ("Imani") assert both federal and state constitutional violations based on alleged retaliation after Robinson filed a discrimination charge against a state agency. Presently before the Court are three motions by defendants Paul Jarris, Sharon Moffatt, and William Apao ("Defendants") -- a motion to dismiss, which addresses Robinson's official-capacity claims (Paper 5), a

1

motion to dismiss individual-capacity claims (Paper 14) and a motion to dismiss the amended complaint.[1]  For the following reasons, Defendants' motion to dismiss the official-capacity claims (Paper 5) is granted in part and denied in part, the motion to dismiss the individual-capacity claims (Paper 14) is denied, and the motion to dismiss the amended complaint (Paper 25) is likewise granted in part and denied in part.

II.  Background

Facts alleged in the complaint are assumed to be true for purposes of a motion to dismiss.  Imani is a non-profit organization that seeks to assist persons of color or low income with their health needs.  (Amended Compl. ¶ 7).  Robinson is the executive director of Imani.  Id. at ¶ 3.  Since 1999 Imani has contracted with the State of Vermont to provide assessment services.  Id. at ¶ 8.

---

[1] Defendants first filed a motion to dismiss the official-capacity claims (Paper 5) because they had only been served in their official capacities.  After Robinson properly served Defendants in their individual capacities, Defendants then filed a motion to dismiss those claims. (Paper 14).  Plaintiffs responded to this second motion to dismiss and simultaneously filed a motion to amend the complaint to include greater specificity as to each defendant's actions and to add a claim under 42 U.S.C. § 1981.  (Paper 19).  Although briefing was already complete as to Defendants' motion to dismiss the official-capacity claims before Robinson filed the motion to amend the complaint, Defendants maintain their arguments to dismiss all claims "apply with equal force to the original and amended complaints" and move to dismiss the amended complaint for the same reasons presented in their previously filed briefs. (Paper 25 at 2).

In September 2004 Robinson, who is African-American, met with several officials of the Vermont Department of Health, including department chiefs William Apao ("Apao"), Kurt Kleier ("Kleier"), Don Schwartz, Rod Copland, and deputy commissioner Sharon Moffatt ("Moffatt").  Id. at ¶ 10.  Robinson claimed he received differential treatment -- including delay in payment -- involving four survey forms compared to another contractor, not of color.  Id. at ¶ 11.  Since the complaints were not resolved, on October 11, 2004 Imani filed a discrimination charge (signed by Robinson, on behalf of Imani) with the Vermont Human Rights Commission.  Id. at ¶¶ 12-14.[2]

On or about November 9, 2004, the Vermont Department of Health, through its department head Kleier, emailed two National Organizations, "publicizing the charges in an effort to disparage Imani and Allen Robinson.  The email was subsequently widely circulated."  Id. at ¶ 18.  Robinson then met with Health Commissioner Paul Jarris.  After reading the email, Dr. Jarris ("Jarris") allegedly said, "[t]hat's retaliation," asked for a

---

[2] According to Plaintiffs, The Vermont Human Rights Commission investigated the charge under the Fair Employment Practices Act, 21 V.S.A. § 495, rather than the Vermont Fair Housing and Public Accommodations Act, 21 V.S.A. chapter 139.  Because Robinson is an employee of Imani, not of the Vermont Department of Health, the Vermont Department of Health sought dismissal of the charge.  (Amended Compl. ¶¶ 16, 17).  In May 2005 the Vermont Human Rights Commission dismissed the charge because Imani is a corporation, and therefore not an employee of the Vermont Department of Health.  Id. at ¶ 27.

copy of the email and said he would follow up with Robinson, but failed to do so.  Id. at ¶¶ 19-21.

On or about November 2004, the Vermont Department of Health, through Kleier, recommended a reduction of Imani's contract from $35,000 to $25,000.  Id. at ¶ 22.  Imani was the only agency for which a cut was recommended.  Id. at ¶ 23.  During that same time period, after Imani had filed the charge with the Human Rights Commission, Kleier sought replacement contractors for Imani's services.  Id. at ¶ 24.  Later that same month, Apao "acting for all Defendants said that he would further reduce the contract, without explanation, from $25,000 to $11,000."  Id. at ¶ 25.

In January 2005 Defendants "began their series of retaliatory reductions of contracts against Plaintiffs, issued by the Commissioner or Deputy Commissioner of Health."  Id. at ¶ 26.  Imani has "continued to receive contracts since its Charge to the Human Rights Commission that are reduced to less than one-third in amount compared to its contracts before Defendants began their retaliation."  Id. at ¶ 28.  Robinson maintains "[d]efendants reduced the contracts in direct retaliation for the Charge by Imani and Allen Robinson to the Vermont Human Rights Commission. . . . of differential treatment."  Id. at ¶ 29.

III. Discussion

Among other arguments, Defendants assert sovereign immunity bars the official-capacity claims under Fed. R. Civ. P. 12(b)(1),

and the individual-capacity claims should be dismissed for either failure to state a claim under Fed. R. Civ. P. 12(b)(6) or absolute immunity under Fed. R. Civ. P. 12(b)(1).

    A.   <u>Standard of Review</u>

When reviewing a motion to dismiss under Rule 12(b)(1), the court views all facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. <u>Raila v. Unites States</u>, 355 F.3d 118, 119 (2d Cir. 2004). The court should not dismiss the complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." <u>Id.</u> "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is "substantively identical" to the standard applied to a Rule 12(b)(1) motion, however, in a Rule 12(b)(6) motion, the defendant has the burden of proof. <u>See</u> <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 128 (2d Cir. 2003). Although "detailed factual allegations," are not required, "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955,

1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).  Id. (internal citations omitted).  A plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.

    B.   Official-capacity claims

        1.  Federal claims brought under 42 U.S.C. § 1983

           a.  Damages

Plaintiffs' complaint alleges Defendants violated 42 U.S.C. §§ 1981[3] and 1983.  Defendants in turn argue that sovereign immunity bars a claim for damages under 42 U.S.C. § 1983.  Section 1983 provides a right of action against:

> every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[3] Plaintiffs added the § 1981 claim to the Amended Complaint.  Defendants' motion to dismiss the amended complaint (Paper 25) does not refer directly to the § 1981 claim, but they address it indirectly in an earlier filing, claiming should Defendant make an equal protection claim, the Court should reject it because "[p]laintiffs' harms 'are alleged to be the product, not of discrimination, but of retaliation for [Imani's] complaints of discrimination."  Paper 15 at n.3 (quoting Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996)).  In Bernheim the Second Circuit noted, "we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."  Id.

6

42 U.S.C. § 1983.  The Supreme Court has made clear, however, "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Accordingly, Defendants' motion in this respect is granted, and the portion of Count I seeking damages under 42 U.S.C. § 1983 from Defendants in their official-capacities is dismissed.

### b. <u>Injunctive relief</u>

Plaintiffs also seek injunctive relief under 42 U.S.C. § 1983.  Defendants claim "[p]laintiffs have not alleged imminent or ongoing violations of law sufficient to warrant prospective relief."  (Paper 6 at 4).  Defendants suggest the presence of "only one factual allegation suggesting ongoing violations: 'Imani has continued to receive contracts since its Charge to the Human Rights Commission that are reduced to less than one-third in amount compared to its contracts before Defendants began their retaliation.'" (<u>Id.</u> quoting Amended Compl. ¶ 28).  Defendants therefore conclude the allegation "intimates that there may be additional past instances in which Imani received smaller grant awards than others it had previously received.  It does not, however, allege that Imani is facing and will face ongoing retaliation in the form of future reductions."  <u>Id.</u>

On this point, the Court agrees with Plaintiffs that "the ongoing nature of the retaliation is not reasonably in question."

7

(Paper 9 at 2). It seems plain that if Imani has continued to receive reduced contracts since its Charge to the Human Rights Commission, there is reason to believe these reductions will continue into the future. Therefore, Defendants' motion to dismiss Plaintiffs' section 1983 claims seeking injunctive relief is denied.[4]

### 2. State-law claims

Count II of Plaintiffs' Amended Complaint focuses on the alleged deprivation of Vermont Constitutional Rights, namely Chapter One, Articles 1, 4, 6, 7, 9, 12, 13, and 20 in violation of Vermont Constitution Chapter Two, § 71. To the extent this count is directed to state officials acting in their official-capacities, the government correctly notes the Eleventh Amendment bars federal court jurisdiction over these state-law claims. According to the Supreme Court " . . . a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment . . . this principle applies as well to state-law claims brought into federal court under pendent

---

[4] On the last page of their most recent filing, Plaintiffs consent to the dismissal of Jarris "under its State constitutional claims" because Jarris is no longer Commissioner of Health. Plaintiffs note they will file a motion to add the newly appointed Commissioner of Health, Wendy Davis, for purposes of injunctive relief. (Paper 26 at 6). In the event a motion to substitute the present Commissioner is made, this ruling would apply to him or her.

jurisdiction."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984).  Accordingly, Defendants' motion to dismiss the portion of Count II directed toward official-capacity state-law claims is granted.

    C. Individual-capacity claims

Plaintiffs allege individual-capacity claims against Defendants Jarris and Moffatt.

    1. No connection between protected conduct and alleged retaliatory action

To establish a retaliation claim under 42 U.S.C. § 1983, Defendants claim Plaintiffs must show: 1) their conduct was constitutionally protected, and 2) their conduct "prompted or substantially caused defendant's action".  Dougherty v. Town of N. Hempstead. Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002) (internal citations omitted).  Defendants argue Plaintiffs fail to satisfy the second requirement because the facts set forth do not suggest that "any decision regarding the amount of Imani's contracts was motivated by, or in any way connected to, the HRC complaint."  (Paper 15 at 1).  According to Defendants, Plaintiffs rely solely on the timing of the protected conduct and the alleged retaliation, but do not provide any factual allegations to "bridge the gap from the bare order of events to a causal relationship between the HRC complaint and the Department's decision concerning Imani's grant."  Id. at 4.

As a result, Plaintiffs do not state a valid claim under 42 U.S.C. § 1983 and the individual-capacity state-law claims should fail for the same reason.

In Dougherty, the Second Circuit noted "[t]he ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint." 282 F.3d at 91. The focus of this Court's inquiry, therefore, is whether the complaint "allege[s] facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Id.

A review of Plaintiffs' Amended Complaint reveals they are not relying solely on the temporal proximity of the protected conduct and the alleged retaliatory action. First, within the same month that Imani's contract was reduced from $35,000 to $25,000 and then further reduced to $11,000, the Vermont Department of Health publicized (by an email) the charge Imani had filed with the Vermont Human Rights Commission. This email was then widely circulated. Moreover, Robinson met with Jarris regarding the email and Jarris, after reading the email, allegedly responded, "that's retaliation," asked for a copy of it, and indicated he would follow-up with Robinson. These are facts from which retaliatory intent may be inferred. Thus,

Defendants' motion to dismiss the individual-capacity claims under section 1983 and the Vermont Constitution is denied.[5]

### 2. Lack of personal involvement

Defendants further argue the individual-capacity claims under 42 U.S.C. § 1983 should be dismissed because they do not allege personal involvement by Former Commissioner Jarris or Acting Commissioner Moffatt. Defendants request in the alternative, Plaintiffs should be required to "flesh out the retaliation claim." (Paper 15 at 5).

In addition to direct participation by a supervisor in the challenged conduct, personal involvement may also be demonstrated by evidence of an official's:

> (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

---

[5] Defendants also maintain the complaint violates Rule 8 because there are no links between the cited constitutional provisions and the alleged conduct -- Plaintiffs do not map each cited provision to the alleged wrongful conduct and further confuse matters by including articles of the Vermont Constitution that appear to not support a private cause of action (Articles 1, 4 and 6) and articles that "bear no clear connection to plaintiffs' allegations," such as Article 9 (Proportional Contribution clause) and Article 12 (right to trial by jury). See Paper 6 at 6-7 and n. 2. Plaintiffs did not respond to this argument, but nevertheless include those articles in their Amended Complaint. Since this issue has not been fully briefed, the Court withholds ruling on it while noting Defendants' argument may have merit.

Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).

Plaintiffs filed an amended complaint with additional details of the personal involvement of Jarris and Moffatt. They allege Moffatt was present at the September 2004 meeting in which Robinson complained of differential treatment (Amended Compl. ¶¶ 10-11), and that she was one of the members of "upper management" to whom Kleier recommended a reduction of the contract with Imani. Id. at ¶ 23. As to Jarris, Robinson claims he met with Jarris after Kleier publicized Imani's charge by sending an email to two National Organizations. Id. at ¶¶ 18-19. As noted earlier, Robinson claims he "advised Dr. Jarris of the unequal treatment that he had been receiving, and showed him a copy of the email," to which Jarris responded, "[t]hat's retaliation." Id. at ¶¶ 20-21. These facts, read in the light most favorable to Plaintiffs, allege sufficient personal involvement on the parts of Jarris and Moffatt to survive a motion to dismiss. Defendants' motion to dismiss the individual-capacity claims brought under 42 U.S.C. § 1983 is accordingly denied.

    3.    Absolute Immunity

Defendants rely on absolute immunity under Vermont law as a basis for dismissing the state-law individual-capacity claims in Count II. Absolute immunity would bar this Court's jurisdiction, resulting in dismissal under Fed. R. Civ. P. 12(b)(1). Defendants note "absolute immunity shields judges, legislators

and the state's highest executive officers in cases where the acts complained of were performed within their respective authorities.  When available, absolute immunity applies to any and all acts performed within the individual's authority." Levinsky v. Diamond, 151 Vt. 178, 185, 559 A.2d 1073, 1078 (1989), overruled on other grounds by Muzzy v. State, 155 Vt. 279 (1990).  Defendants maintain Jarris and Moffatt, as Commissioners, are covered by absolute immunity and the alleged wrongful conduct is within their authority (Paper 15 at 7-8), and that the "focus of the analysis is the alleged acts, not the alleged intent of the actor."  (Paper 22 at 3).

Plaintiffs acknowledge "the Commissioner of Health has authority to grant contracts," but argue "the Vermont Supreme Court has not addressed intentional constitutional retaliation by executive officers exercising non-judicial functions. Retaliation is presumably not authorized, nor could it be authorized by statute."  (Paper 26 at 4-5).  Thus, Plaintiffs conclude, "[i]n other words, absolute immunity does not extend *carte blanche* to an absolutely immune official to continue to violate constitutional rights."  Id. at 5 (emphasis in original). Considering this case is in the early phases of litigation and further factual development would aid the framing of any issue which may be certified to the Vermont Supreme Court, the Court

denies Defendants' motion to dismiss the individual-capacity state-law claims in Count II.

IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss (Paper 5 and Paper 25) are granted in part and denied in part. Defendants' claims brought under 42 U.S.C. § 1981 are dismissed. As to the official-capacity claims brought under 42 U.S.C. § 1983, those seeking damages are dismissed, while those claims for injunctive relief are not. Defendants' official-capacity state-law claims are barred by the Eleventh Amendment, and are therefore dismissed. Defendants' motions to dismiss the individual-capacity claims (Paper 14 and Paper 25) are denied.

The parties are ordered to consult and file a proposed Stipulated Discovery Schedule/Order on or before September 26, 2008, which provides for a trial readiness date of February 1, 2009.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 25th day of August, 2008.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge