UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| ALLEN R. ROBINSON and IMANI HEALTH INSTITUTE, INC.<br><br>        Plaintiffs,<br><br>        v.<br><br>PAUL JARRIS, Individually and as Health Commissioner for the State of Vermont, SHARON MOFFATT, Individually and as Health Commissioner for the State of Vermont, and WILLIAM APAO, Director, Division of Surveillance, Vermont Department of Health,<br><br>        Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: File No. 1:07-CV-265<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Papers 39)

I.    Introduction

Plaintiffs Allen R. Robinson and Imani Health Institute,

Inc. bring this action against Paul Jarris, Sharon Moffatt, and

William Apao[1] under 42 U.S.C. § 1983 for deprivation of federal

constitutional rights.  The claims arise from the reduction of

Imani's grant to provide HIV/AIDS prevention and assessment

services.  Defendants move for summary judgment under Federal

Rule of Civil Procedure 56.  (Paper 39.)  Defendants argue

Plaintiffs' speech is not constitutionally protected, and even if

---

[1]    Plaintiffs are reminded to file a motion to add the current Commissioner of Health as a defendant for purposes of injunctive relief.  See Paper 27 at 8 n.4.

1

it is, no causal relationship exists linking the speech and the reduction in Plaintiffs' grant amount, and it does not qualify as an adverse action.  Defendants also claim they are entitled to qualified immunity.  (Paper 40.)  For the following reasons, the motion for summary judgment is denied.

II.  Background

The facts are viewed in the light most favorable to Plaintiffs for purposes of a motion for summary judgment.[2]  Imani is a non-profit organization whose mission is to assist the health needs of persons of color or low income with their health needs.  Allen Robinson is the executive director of Imani.  Since 1999, Imani has applied for and received grants from the Vermont Department of Health (VDH) to provide HIV/AIDS prevention and assessment services, mostly in corrections facilities.  During the events underlying this lawsuit, defendant Paul Jarris was the Health Commissioner for the State of Vermont, defendant William Apao was the Director of the VDH Division of Surveillance, and defendant Sharon Moffatt was the Deputy Commissioner of the VDH.  Moffatt later became the acting Health Commissioner.

In September 2004, Robinson, who is African-American, met with several VDH officials, including Apao and then Deputy Commissioner Moffatt.  Robinson claimed Imani had received

---

[2]      The basic background facts are gleaned from the Court's prior ruling on Defendants' Motion to Dismiss (Paper 27) and the parties' statements of facts.  (Papers 41, 54, 72.)

different treatment consisting principally of delay in payment

for a survey he administered because the results included four

unsigned consent forms.  Another VDH grantee, managed by a woman

not of color was promptly paid, even though she administered the

same survey and returned 76 unsigned consent forms.  Since

Robinson's complaints were not resolved at the meeting, on

October 11, 2004 Imani filed a charge alleging discrimination on

the basis of race, gender, and sexual orientation (signed by

Robinson, on behalf of Imani) with the Vermont Human Rights

Commission (HRC).  The charge referenced the survey payment issue

as the "inconsistent and discriminatory treatment" to which Imani

was subjected.  (Paper 41-2 at 1.)  The HRC charge was dismissed

in May 2005 because Imani is a corporation, and therefore not an

employee of the VDH.[3]

In July 2004, Robinson received the Request for Proposal

(RFP) from VDH for a new cycle of grants for HIV prevention.[4]

_____

[3]     Robinson alleges the charge was improperly investigated
under the Vermont Fair Employment Practices Act (VFEPA) instead
of the Vermont Fair Housing and Public Accommodations Act.
(Paper 40 at 3, ¶ 16.)  However, Robinson cited the VFEPA in the
charge submitted to the HRC.  (Paper 41-2 at 1.)

[4]     The RFP stated VDH "reserves the right to reject any
and all applications after they have been evaluated, to negotiate
awards after the application process and to accept applications
deemed most favorable to the interest of the State of Vermont."
(Paper 54 at 4.)  Additionally, the cover letter from Susanna
Weller, Acting Director, HIV/AIDS Program, noted:  "The HIV/AIDS
Program has received a slight funding cut and additional grant
requirements . . . .  For this reason we anticipate that we will
fund fewer organizations in the upcoming grant cycle.  (Paper 41-
5 at 1.)

Robinson was advised that any proposed intervention must be evidence-based or supported by behavioral science. (Paper 54 at 3.) Plaintiffs timely submitted the completed RFP. In October 2004, the external review panel of the VDH approved Plaintiffs' application with recommendations. Id. at 4-5.

The VDH internal review panel reviewed the application in late October and early November and noted the model used in Plaintiffs' application was not evidence-based and therefore "not approved for this program." Id. at 5. The internal review panel initially recommended not to fund Imani because of the model used. Id. Eventually, the panel recommended Imani be awarded $30,000 to $35,000, "[d]espite strong concerns," because failure to fund Imani could lead to a gap in service coverage. Id. Subsequently, the recommendation was reduced to $25,000 (Paper 50 at 4, ¶ 22) and ultimately to $11,000 for Imani to service the Chittenden Correctional Facility only. (Paper 41-9.) Plaintiffs' application sought funding to service seven facilities inside and outside Chittenden County. Id.

In November 2004, a VDH official emailed two national organizations, "publicizing the charges in an effort to disparage [Plaintiffs]. The email was subsequently widely circulated." (Paper 50 at 3-4, ¶ 18.) Robinson then met with defendant Jarris. After reading the email, Dr. Jarris allegedly said,

"[t]hat's retaliation," asked for a copy of the email, and said

he would follow up with Robinson, but failed to do so.

On November 24, 2004, VDH notified Robinson Imani would be

awarded $11,000.  (Paper 54 at 8.)  Imani has "continued to

receive contracts since its Charge to the [HRC] that are reduced

to less than one-third in amount compared to its contracts before

Defendants began their retaliation."  (Paper 50 at 5, ¶ 28.)

Plaintiffs also allege Defendants' retaliation led to the

discontinuation of Imani's contract with the Department of

Corrections (DOC).  Id.  Robinson maintains "[defendants reduced

the contracts in direct retaliation for the Charge by Imani and

Allen Robinson to the [HRC] . . . of differential treatment."

Id. ¶ 29.

III. Discussion

A.   Motion for Summary Judgment Standard

Summary judgment is appropriate only where the parties'

submissions show that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56; see also, e.g., Wright v.

Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue of

material fact arises when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must

view the record in the light most favorable to the non-moving

party, Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006), and resolve ambiguities and draw inferences in favor of the non-moving party, Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (internal citation omitted).

B.    Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate deprivation of a federal right and the person responsible for the deprivation acted under color of state law. Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency, 77 F.3d 26, 29-30 (2d Cir. 1996) (internal citation omitted).  For a retaliation claim under § 1983 to be viable, a plaintiff must establish his speech was protected by the First Amendment.  Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).  The Supreme Court has established a two-step analysis to determine the constitutional protection of speech of a public employee or independent contractor.[5]  Garcetti v. Ceballos, 547 U.S. 410 (2006).  First, a court must determine "whether the employee spoke as a citizen on a matter of public concern."  Id. at 418.  If not, the employee has no First Amendment cause of action based on the employer's reaction to the speech.  Id.  If so, the possibility of a First Amendment claim arises and the second determination the court must make is

_____

[5]    For purposes of First Amendment retaliation claims, independent contractors' claims are analyzed under the framework applicable to government employees.  Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 673, 677-79 (1996).

"whether the relevant government entity had an adequate

justification for treating the employee differently from any

other member of the general public."  Id.

      1.   First Step

The first inquiry is whether Robinson spoke as a citizen on

a matter of public concern.  When speaking pursuant to official

duty, the speech is not made as a citizen for First Amendment

purposes.  Garcetti, 547 U.S. at 417; see also Almontaser v. N.Y.

City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).  The

speech at issue here -- Plaintiffs' HRC complaint of

discrimination -- was not made pursuant to official duty.

Accordingly, Robinson spoke as a citizen.

Robinson also must have been speaking on a matter of public

concern.  A First Amendment claim succeeds only if the speech

fairly can be considered as a matter of public concern, i.e., as

"related to any matter of political, social, or other concern to

the community."  Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.

2003) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983));

see also City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004)

(explaining "public concern is something that is a subject of

legitimate news interest; that is, a subject of general interest

and of value and concern to the public").  Whether an independent

contractor's speech addresses a matter of public concern is a

question of law for the court and is determined by considering

7

"the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. A complaint solely of personal dissatisfaction with conditions of employment is speech on matters only of personal interest. Id. at 147. As the Second Circuit recently made clear, however, it does not follow that "a person motivated by a personal grievance cannot be speaking on a matter of public concern." Sousa v. Roque, No. 07-1892-CV, 2009 WL 2568949, at *8 (2d Cir. Aug. 21, 2009). Motive alone is not dispositive. Id. at *9.

Defendants first argue Plaintiffs' speech is not constitutionally protected because it does not touch on a matter of public concern. (Paper 40 at 4-11.) Relying on Ruotolo v. City of N.Y., 514 F.3d 184 (2d Cir. 2008), they argue Plaintiffs' meeting with VDH officials and the concomitant HRC charge addressed a grievance specific to Imani. Id. at 4. The HRC charge alleged discrimination "based on the protected characteristics of [r]ace, [g]ender and [s]exual [o]rientation by employing different terms and conditions to [Imani] as a grantee as compared with other grantees, which are not directed by an African-American heterosexual male." (Paper 41-2 at 1.) Defendants contend, notwithstanding this allegation, Plaintiffs' primary aim "was to address a single, discrete payment issue specific to Imani," and therefore, the reference to race, gender, and sexual orientation does not transform the personal nature of

8

the complaint into a matter of public concern.  Id.  This

argument fails in light of the Second Circuit's recent

clarification of the law regarding what constitutes a matter of

public concern; the Circuit Court specifically distinguished

Ruotolo.  Sousa, 2009 WL 2568949, at *13-14 & n.7.

Plaintiffs' responses to Defendants' argument also miss the

mark for more than one reason.  They first argue Defendants are

judicially estopped from claiming Robinson is an employee and

therefore had no right to petition government because Defendants

prevailed before the HRC and in state court on the ground that

Robinson is not an employee.  (Paper 55 at 8-9.)  Plaintiffs

provide no citations or support for this argument; accordingly,

the Court does not consider it.  Pelfresne v. Vill. of Williams

Bay, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails

to press a point by supporting it with pertinent authority . . .

forfeits the point.").  Further, the references to "employee" in

the context of the free speech First Amendment analysis are

proper because, as noted in footnote 4, the same analysis applies

to independent contractors.

Plaintiffs next argue a claim based on the right to petition

government is separate from a free speech First Amendment claim

and need not implicate a matter of public concern to merit

constitutional protection.  (Paper 55 at 9.)  In the Second

Circuit, a petition for redress of grievances "is generally

subject to the same constitutional analysis as the right to free

speech." Bates v. Bigger, 56 F. App'x 527, 530 (2d Cir. 2002)

(internal quotation omitted). Buried in Plaintiffs' opposition,

however, is the bare allegation that "[r]ace discrimination by a

public agency is a matter of public concern." (Paper 55 at 9.)

In this case, the speech at issue is the complaint alleging

race, gender, and sexual orientation discrimination consisting of

the delay in payment to Imani, an organization managed by an

African American heterosexual male, for administering a survey

when another grantee, headed by a white female, was paid promptly

despite returning more incomplete forms. The types of discrim-

ination alleged are of sufficient concern to the public. Though

the allegation of discrimination was raised in speech to the HRC

in the hope of redressing Plaintiffs' personal grievance that

Imani was treated differently than other grantees, in light of

the Circuit's recent decision in Sousa, the Court finds as a

matter of law Plaintiffs spoke on a matter of public concern.

     2.   Second Step

The second determination the court must make is "whether the

relevant government entity had an adequate justification for

treating the employee differently from any other member of the

general public." Garcetti v. Ceballos, 547 U.S. 410 (2006). In

the Second Circuit, a plaintiff alleging an adverse employment

action as retaliation for exercising First Amendment rights must

show he suffered an adverse employment action and a causal

connection between the speech and the action.  Singh v. City of

N.Y., 524 F.3d 361, 372 (2d Cir. 2008) (citation omitted).

### a.    Adverse Employment Action

"Retaliatory conduct that would deter a similarly situated

individual of ordinary firmness from exercising his or her

constitutional rights constitutes an adverse action."  Washington

v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) (citation

omitted).  Whether an "action qualifies as being 'adverse' is a

heavily fact-specific, contextual determination."  Zelnik v.

Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006)

(internal quotation and citation omitted).  Common examples of

adverse employment actions are discharge, refusal to hire,

refusal to promote, demotion, reduction in pay, and reprimand.

Id. (citation omitted).

Defendants argue Plaintiffs have suffered no adverse action

because Imani applied for and received funding from VDH in a new

funding cycle after the HRC complaint, i.e., the protected

speech.  (Paper 40 at 11-12.)  Plaintiffs argue they suffered

three adverse actions:  (1) publication of their HRC charge --

despite the confidential nature of the proceedings -- to other

organizations from whom they sought funding; (2) reduction of

their VDH contract amount without justification from $35,000 to

$11,000; and, (3) cutting funding for work they previously

performed for the Department of Corrections (DOC).  (Paper 55 at

12-15.)

Viewing the evidence in the light most favorable to

Plaintiffs, they suffered at least one adverse action.  A

reasonable jury could conclude that publication of a confidential

civil rights complaint to other organizations from whom

Plaintiffs sought funding could deter a similarly situated

individual of ordinary firmness from exercising his or her

constitutional rights.  Similarly, evidence regarding the cut-off

of grant funds administered by the VDH for the DOC that had been

previously awarded to Plaintiffs, could also constitute an

adverse action.  Lastly, the reduction of Plaintiffs' grant

amount from the initial recommendation of $35,000 to $11,000 for

the final award could be considered an adverse action in the

absence of context explaining the reduction.  On a motion for

summary judgment, the Court is required to draw inferences in

Plaintiffs' favor; it does so on this element.

b.   Causal Connection

A causal connection between speech and the adverse action is

demonstrated where the speech was a substantial or motivating

factor.  See Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 224

(2d Cir. 2006).  A plaintiff can establish the causal connection

indirectly by showing the protected speech was followed by

adverse treatment or directly by evidence of retaliatory animus.

Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2004) (internal

quotation and citation omitted).  However, "a plaintiff may not

rely on conclusory assertions of retaliatory motive to satisfy

the causal link. [] Instead, he must produce some tangible proof

to demonstrate that his version of what occurred was not

imaginary."  Id. (internal quotation and citation omitted).

Even if a plaintiff establishes a causal connection, a

defendant may prevail on a First Amendment retaliation claim if

it can show it would have taken the same adverse employment

action absent the protected conduct.  See Cotarelo v. Vill. of

Sleepy Hollow Police Dep't, 460 F.3d 247, 253 (2d Cir. 2006).  If

the Court finds the evidence sufficient to allow a trier of fact

to determine that Robinson's speech was a factor in the reduction

of Imani's contract amount, Defendants may still prevail on a

motion for summary judgment.  To do so, they must demonstrate as

a matter of law they would have taken the same action if the

protected speech had not occurred.  Id. at 253 (citation

omitted).

At this stage in the proceeding, the evidence is sufficient

to allow a reasonable jury to find a causal connection between

the protected speech and the alleged adverse action of the

publication of the HRC charge to other funding organizations.

Plaintiffs point to a statement by Defendant Jarris in which he

allegedly stated "that's retaliation."  The HRC charge was the

subject matter of the email and therefore could be a substantial
motivating factor in its publication.

Also at this stage, Plaintiffs' have shown a genuine issue
of material fact exists regarding a causal connection between the
protected speech and the alleged adverse action in the reduction
of the VDH grant.  Defendants have shown the internal review
panel of VDH initially recommended no funding for Imani because
the Plaintiffs' RFP was not evidence-based.  (Paper 41-7 at 1.)
After noting concerns of gaps in coverage however, the internal
review panel eventually recommended funding below Imani's RFP
amount to allow Imani to provide local services.  (Paper 54
at 5.)  Ultimately, the panel, "despite strong concerns,"
recommended that Imani be awarded $30,000-$35,000.  Id.

In support of their claim, Plaintiffs point to evidence that
defendant Apao was "furious" after a September meeting with
Robinson in which Robinson complained of discrimination.  This
meeting took place prior to the October HRC charge.  (Paper 50 at
2-3.)  Plaintiffs' also point to the lack of explanation for
reduction of the grant after the $35,000 funding recommendation
by the internal review panel in November.  Viewing the facts in
the light most favorable to Plaintiffs, the evidence raises a
genuine issue of material fact regarding retaliatory reduction.

At this stage, the Court will not grant summary judgment
regarding the DOC grant because the parties did not sufficiently

14

address the issue in their statements of fact.  See Papers 41,
72.  Defendants do not address the alleged adverse action of
cutting funding from the DOC at all.  See Paper 41.  Plaintiffs
allege Defendant Apao "initiated action," Paper 55 at 15, and
"intervened to prevent" the DOC from funding Imani, Paper 72 at
3, ¶ 10.  This evidence alone, however, is insufficient to
determine whether a reasonable jury could find a causal
connection between the protected speech and the alleged adverse
action of cutting funding for work Plaintiffs previously
performed for the DOC.  Because the Court is required to draw
inferences in Plaintiffs' favor, it does so on this element

    C.   Qualified Immunity

Defendants argue the individual defendants are entitled to
qualified immunity.  The privilege of qualified immunity protects
government officials, sued in their individual capacities, from
facing suit, not merely liability.  Saucier v. Katz, 533 U.S.
194, 201-02 (2001).  To determine whether an official is entitled
to qualified immunity, the court must conduct a two-part
analysis.  "[T]he first inquiry must be whether a constitutional
right would have been violated on the facts alleged; [and]
second, assuming the violation is established, the question
whether the right was clearly established must be considered."
Id. at 200.

The parties' qualified immunity briefing is minimal and does not address the claims for the elimination of funding for DOC projects or the publication of the HRC charge. Based upon the parties' submissions and the Court's denial of summary judgment on the merits, the Court is doubtful that Defendants are entitled to qualified immunity. The Court, however, declines to undertake that analysis until the parties submit further briefing on the issue.

IV. Conclusion

For the above reasons, Defendants' Motion for Summary Judgment (Paper 39) is DENIED in part. The parties are instructed to submit additional memoranda, on or before October 9, 2009, not to exceed ten pages, regarding the individual defendants' entitlement to qualified immunity on Plaintiffs' First Amendment retaliation claim based on each alleged adverse action. No responses are necessary.

Plaintiffs' Motion for Oral Argument on Pending Motion for Summary Judgment (Paper 64) is DENIED as moot.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 17th day of September, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Martha
Senior United States District Judge